**REFUSE & ENVIRONMENTAL SYSTEMS, INC., et al.**

v.

**INDUSTRIAL SERVICES OF AMERICA d/b/a Computerized Waste Systems, Inc., et al.**

Civ. A. No. 85-0375-F.

United States District Court, D. Massachusetts.

April 28, 1988.

George F. Kelly, Ryan & White, Springfield, Mass., John J. Pribish, N. Brunswick, N.J., for plaintiffs.

Steven W. Leary, Springfield, Mass., for David Goodman.

George W. Leary, Springfield, Mass., for Daniel Goodman.

F. Michael Joseph, Springfield, Mass., for Samuel Rosenberg, Joseph Freedman.

Charles Bergin, Robinson, Donovan, Springfield, Mass., for Computerized Waste.

Edward Donnellan, Keyes & Donnellan, Springfield, Mass., for Kletter, Comp. Waste; Freedman & Burke.

**MEMORANDUM AND ORDER REGARDING MOTION FOR RELIEF FROM PROTECTIVE ORDER**

MICHAEL A. PONSOR, United States Magistrate.

## I. INTRODUCTION.

Plaintiffs have filed this motion seeking relief from a protective order barring any

deposition of Attorney F. Michael Joseph. The protective order was issued by the district court on February 26, 1986 in response to a motion from Attorney Joseph asking "that he not be required to be deposed or answer questions which relate to matters involved in the above-entitled action ..." on the ground that he "is an attorney for one of the parties and these matters are privileged and involve matters that are prepared in anticipation of litigation in the above-entitled action." Motion for Protective Order, Docket # 56.

Plaintiffs now seek relief from this protective order on the ground that subsequent events since its issuance demonstrate both that the deposition of Attorney Joseph is not barred by any privilege and that whatever privilege may have existed has now been waived by the defendants. Defendants vigorously oppose the motion. For the reasons set forth below, the motion for relief will be allowed, in part.

## II. PROCEDURAL AND FACTUAL BACKGROUND.

On or about May 29, 1985 the defendants in this federal action caused a lawsuit to be filed in the Massachusetts Superior Court, alleging that Richard V. Bisesti, a plaintiff in this federal action and a principal of the corporate plaintiff, committed trade secret violations and interference with contractual relations. An additional count for unfair competition was later added. Three months later, this lawsuit was filed here in federal court in which Bisesti, now a plaintiff, alleges that the state court action was filed by the defendants with the knowledge that it had no basis in fact, with the intent to eliminate or interfere with plaintiffs' efforts to compete with the defendants and in violation of the Clayton and Sherman Antitrust Acts. A motion for preliminary injunction was heard but resolved via issuance of a consent order on December 16, 1985.

Discovery thereafter unfolded briskly and on January 30, 1986 a notice of deposition of F. Michael Joseph was filed with the court. Thereafter, the motion for protective order of Attorney Joseph, as quoted above, was filed on February 10, 1986 and allowed over the objection of plaintiffs' counsel on February 26, 1986.

Not surprisingly, depositions noticed by the plaintiffs have been directed at exploring, among other things, the decision-making process leading to the filing of the state court lawsuit by the defendants. As the affidavit of counsel for the plaintiffs indicates, through quotations from the depositions of defendants Burke, Kletter and Freedman (three key principals of the corporate defendant) the defendants have played something of a penny-penny-who's-got-the-penny game with the plaintiffs. Each individual defendant claims that one of the others was responsible for the decision to file the state lawsuit and denies any knowledge of its basis. How the defendants' lawsuit ever got filed in state court is shrouded in mystery.

In addition, at the deposition of defendant Freedman a colloquy among counsel took place, again quoted in the affidavit of plaintiffs' counsel in support of the Motion for Relief from Protective Order, which plaintiffs' counsel interpreted as indicating, in effect, that defendants would be relying upon what he characterized as the "advice of counsel" defense in the presentation of defendants' case. Counsel for the defendants somewhat disagree that this is the correct inference to draw from the colloquy. In his view, it is not necessary formally to assert any "advice of counsel" defense; rather, he expected that the simple fact that the defendants consulted counsel prior to filing the state court lawsuit would come out during the testimony. He implied that the jury could draw whatever inferences were appropriate from this fact of consultation with counsel in determining whether the state court action was a sham.

Plaintiffs now argue that relief from the protective order is appropriate for two reasons: first, the elusive quality of defendants' responses regarding who was responsible for the decision to file the lawsuit makes Attorney Joseph's testimony—since he signed the complaint and is the only person who can definitively indicate who

authorized him to bring the action—crucial. Second, plaintiffs argue that defendants' intention to use an inference of good faith based upon consultation with counsel—whether this can be characterized as a formal "advice of counsel" defense or not—makes defendants' interactions with Attorney Joseph a fair and proper area of inquiry in the case. By relying, even implicitly, upon an argument that their consultation with an attorney shows their good faith, plaintiffs contend that defendants have waived any protection offered by the attorney/client privilege and opened the whole area of attorney/client communication regarding the state court lawsuit to exploration in discovery.

## III. DISCUSSION.

In determining what rules should guide a federal court in applying the law of privilege, Fed.R.Evid. 501 states that courts should look to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" except in civil actions and proceedings "as to which State law supplies the rule of decision...." It is not entirely clear whether federal or Massachusetts common law controls this court's decision, since plaintiffs' complaint contains counts both under Massachusetts common law and under federal statutes. Since counsel appear to have assumed that federal common law applies and have cited cases mainly from other jurisdictions, and since in addition no suggestion is presented that the Massachusetts rule would differ from the rule of the federal common law, this court will look to federal law in determining the extent of the privilege.

The classic formulation of the attorney/client privilege in this jurisdiction was offered by Judge Wyzanski in *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357 (1950). There, Judge Wyzanski noted:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or

his subordinate and (b) in connection with his communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance on some legal proceeding and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 358.

■ This formulation underlines the preliminary defect in the assertion of the attorney/client privilege here. As noted, the privilege was asserted by a motion signed by, and an affidavit sworn to by, Attorney Joseph. He does not purport to assert the privilege on behalf of any specific client. But a lawyer does not command the privilege; it is for the client to assert or waive. On this ground alone, therefore, the motion for relief from the protective order might be granted. This decision does not rest on that basis, however, since presumably the issue of the protective order might easily be resurrected via some motion by one of the defendants. There is no need to incur this delay, since ample independent reasons support relief from the order.

■ The more fundamental problem is the overbreadth of the protection asserted. It is well established that the burden for establishing the attorney/client privilege is upon the person asserting it. *United States v. Wilson*, 798 F.2d 509, 512–13 (1st Cir.1986); *In Re: Grand Jury Subpoena*, 615 F.Supp. 958 (D.Mass.1985). As Judge Wyzanski's formulation indicates, and as all other authorities confirm, the privilege does not cloak all details of the attorney/client relationship. In fact, many details may be probed without in any way implicating the privilege. The fact that an attorney was consulted, for example, is not protected. The date, length of time and place of the consultation is not protected. Questions may be asked as to who was present at the meeting, since the presence of strangers may vitiate the privilege. Similarly, as the Supreme Judicial Court of

Massachusetts has noted, the privilege "applies only to matters discussed between the attorney and his client which are confidential in nature, and not to matters known to third persons, or intended to be made public." *Commonwealth v. Michel,* 367 Mass. 454, 460, 327 N.E.2d 720 (1975) (citations omitted). Communications by a client to an attorney not acting his role as a lawyer but as a negotiator or business advisor are similarly not privileged. *United States v. Wilson,* 798 F.2d at 513.

As Chief Judge Freedman has noted, blanket assertions of privilege are extremely disfavored. *In Re: Grand Jury Subpoena,* 615 F.Supp. at 964.

More importantly, a communication, to be protected, must be of *"facts* by a client to his attorney for the purpose of securing legal services." *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 42 (D.Mass.1987). (Emphasis supplied). It is the contents of the communications themselves which are protected, not the surrounding circumstances or the fact of consultation itself. Moreover, as the Supreme Court stated in *Upjohn Co. v. United States,* a person may not conceal discoverable facts simply by imparting them to his attorney and then claiming attorney/client privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981).

In summary, the privilege has not been properly asserted. It is not enough simply for an attorney to state that he represents or represented one of the parties and that therefore he may not be deposed or required to "answer questions which relate to matters involved in the above-entitled action...."

As plaintiffs point out, developments in the case since issuance of the preliminary protective order over two years ago underline the relevance of Attorney Joseph's testimony. As noted, Attorney Joseph's testimony as to whom he consulted with prior to filing the state court lawsuit is critical and is clearly *not* privileged. Under the circumstances of the case now, plaintiffs are certainly entitled to relief from the blanket protective order to permit them to depose Attorney Joseph with regard to all matters outside the proper scope of the attorney/client privilege.

▮ As the court noted above, plaintiffs make the further argument that, even as to actual communications, where the protection of the attorney/client privilege ordinarily would exist, defendants should be deemed to have "waived" the privilege. On this, the court does not agree. Counsel for the defendants at hearing, and in the quoted portion of the deposition colloquy, has explicitly stated that he does not intend to rely formally on any "advice of counsel defense." He has no present intention of calling Attorney Joseph. The mere fact that, during the course of the trial, the fact that the complaint was signed by an attorney and filed after consultation with an attorney, will emerge does not constitute in any sense a "waiver" of the attorney/client privilege. At most, it underlines the relevance of Attorney Joseph's testimony, were it obtainable. Obviously, the relevant, or even crucial, quality of testimony or evidence regarding attorney/client communications cannot overcome the privilege. If this were so, the privilege would be useless precisely at those points where it was most important.

*Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976), is not to the contrary. There, defendants clearly indicated that they intended to present at trial the testimony of three attorneys who had advised it with regard to prior lawsuits. Full disclosure of the attorney/client communications was intended by the defendants. Obviously, under these circumstances the privilege is waived. Indeed, in that case there was not even any dispute as to the propriety of deposing the attorneys, only a relatively trivial disagreement having to do with the disclosure of certain documents.

If defendants intended to call Attorney Joseph as part of the presentation of their defense, and to elicit during his testimony his recollection of his communications with the defendants, clearly plaintiffs would be entitled to depose him. Such is not the case here. Similarly, if defendants intend-

ed to testify as to their communication with counsel, the privilege would be waived. Again, the opposite intent is expressed.

At the same time, the court is concerned that the defendants might unintentionally obtain some unfair advantage over the plaintiffs. Defendants, while indicating that they do not currently intend to call Attorney Joseph, have reserved the right to do so if they wish. Defendants may not shield from inquiry during the pretrial phase the attorney/client communications on the ground of privilege, then pull these communications out of the hat shortly before or during the trial, as a part of their defense. Thus, the court will rule that the attorney/client communications do enjoy the privilege, but only on the condition that defendants will be barred from offering testimony from any witness with regard to the content of these communications.

In summary, the Motion for Relief from Protective order is hereby ALLOWED to the following extent: plaintiffs may depose Attorney Joseph and may put questions to him with regard to all normally discoverable matters, except that they may not pose questions requiring him to reveal *facts* communicated to him in confidence for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding, outside the presence of non-privileged third persons. *United States v. Wilson,* 798 F.2d at 512. To avoid confusion, the court notes that plaintiffs may inquire, for example and without limitation, as to the dates, times, places and duration of meetings between Attorney Joseph and his clients. They may inquire as to which, if any, of his clients he consulted with prior to filing the lawsuit and may specifically be asked who, if any, of his clients purported to authorize the filing of the lawsuit. No inquiry may be made, however, into the actual contents of any communications, on the condition that plaintiffs will be barred from offering these communications as evidence at trial. If defendants wish to retain the right to offer the communications as evidence, they must abandon the attor-

ney/client privilege and permit a full inquiry.[1]

The previous scheduling order is hereby amended. Plaintiffs will have until May 31, 1988 to take Attorney Joseph's deposition. The matter will be reported ready for trial at any time thereafter.

It is So Ordered.

---

1. The court notes that if Attorney Joseph is, or becomes, a potential witness in this matter, his *continued representation of a party may* present him with an ethical conflict. See Canon 5, Disciplinary Rule 5–102, Canons of Ethics.