**Richard L. CONKLING,
Plaintiff–Appellant,
Cross–Appellee.**

v.

**Bert S. TURNER, Nichols Construction Corp., David R. Carpenter, et al., Defendants–Appellees, Cross–Appellants.**

No. 88–3631.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1989.

---

Donald L. Beckner, William G. Bennett, Baton Rouge, La., for plaintiff-appellant, cross-appellee & intervenor, Carmen L. St. Clair, et al.

Harry J. Philips, Jr., Tom F. Phillips, Fredrick R. Tulley, Baton Rouge, La., for defendants-appellees, cross-appellants.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,* District Judge.

POLITZ, Circuit Judge:

In this case we examine the parameters within which a party may depose the attorney for the opposing party. The defendants sought to depose the plaintiff's present and former attorneys of record, contending that the depositions were essential to defendants' plea of prescription. The district court directed the attorneys to submit to limited questioning, specifying the questions which could be posed. The plaintiff appeals, contending that the

court's order permits intrusion into protected attorney work product. Defendants cross-appeal, contending that the trial court unreasonably restricted the scope of their requested discovery. For the reasons assigned we affirm.

*Background*

On November 11, 1985 Richard L. Conkling filed suit under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, against Bert S. Turner and several corporations, alleging that he was the victim of a scheme to defraud. Conkling is a former executive officer of Nichols Construction Company, one of the defendant corporations. Conkling claims that on June 28, 1963 he was fraudulently induced by Turner's false assertion that he (Turner) owned 100% of Nichols to relinquish an 8.69565% stock ownership interest in the corporation. Conkling maintains that the defendants furthered their scheme to defraud by numerous acts of mail and securities fraud.

Originally represented by Robert J. Collins, Conkling is currently represented by Donald L. Beckner. Beckner also represents Carmen L. St. Clair in a related suit against the defendants. St. Clair is a former executive officer of Nichols, a party to the 1963 agreement, and an intervenor in this appeal.

The facts relevant to the instant appeal were set in motion on September 19, 1986 when Conkling attested to the following statement in an affidavit:

On November 20, 1984, I retained the law firm of Donald L. Beckner, Counselors and Attorneys at Law. A copy of the retainer agreement is attached hereto as Exhibit "Conkling 4–7." Subsequently, I detailed to Mr. Beckner the facts and documents surrounding my acquisition of Nichols stock in 1962, and the June 28, 1963 "Agreement." During one of these discussions Mr. Beckner informed me that it was his opinion that the statement in the June 28, 1963 "agreement" that Turner owned 100% of the stock of Nich-

---

* District Judge of the Western District of Louisiana, sitting by designation.

ols was false. No one had informed me of the falsity of this statement prior to this discussion. I did not know that Turner's statement was false until I was so informed.

Conkling's affidavit was filed in response to the defendants' summary judgment contention that Conkling's claims were prescribed because Conkling had full knowledge of all facts underlying the alleged scheme in 1963.[1] The district court denied that motion for summary judgment.

On June 10, 1987 the defendants propounded requests for admission of facts and posed interrogatories, seeking to obtain Conkling's admission that Beckner relied solely upon facts supplied by Conkling for the advice about the false statement. The interrogatories stated that if Conkling refused to admit such he should identify all facts and all documents on which his attorney relied which were not previously known by Conkling. The defendants also sought to compel the production of documents and to depose Conkling's attorneys. On October 20, 1987 the district court sustained Conkling's objection to the requested admissions and to the deposition of his attorneys, but ordered Conkling to respond to the interrogatories. Conkling's answers to the interrogatories referred the defendants to deposition testimony provided by Turner in May 1985 as well as all documents produced by the defendants in the St. Clair litigation.

Not satisfied with this response the defendants served another set of interrogatories asking for a specification of all facts and documents reflecting the time Conkling became aware of the defendants' alleged fraudulent conduct. Before Conkling responded to the second set of interrogatories the defendants renewed their motion to compel deposition testimony from Beckner and Collins. The district court ordered the defendants to submit a list of proposed questions that would be asked of the attorneys. The 33 questions submitted are set forth in the Addendum attached hereto.

After reviewing the questions the district court ordered the attorneys to answer questions 1, 2, 3, 4, 14, 15, 19, 20, 21, 22, 30, and 31. The court stated that in responding to these questions the attorneys did not have to provide any legal theories, mental impressions, or trial strategy developed in the case.

### Analysis

1. Jurisdiction

■ The defendants' jurisdictional challenge falters despite the general rubric that an order compelling testimony is not a final decision within the meaning of 28 U.S.C. § 1291. Typically, in order to obtain interlocutory review of a discovery order, the person wishing to resist must refuse to comply and then appeal the court's contempt citation. *See United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). The rule admits of an exception.

When the subpoenaed party does not have a direct and personal interest in suppression of the information that person is not likely to risk a contempt citation. For all practical purposes, the discovery order is final as to the person otherwise powerless to prevent compliance. *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). Applying this exception in *In re Grand Jury Proceedings in Matter of Fine,* 641 F.2d 199 (5th Cir.1981), we exercised jurisdiction over an appeal by a client whose attorney was subpoenaed to give testimony which the client claimed was protected by the attorney-client privilege. We reasoned:

Although we cannot say that attorneys in general are more or less likely to submit to a contempt citation rather than violate a client's confidence, we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to make such a sacrifice. That serious consequence is

---

1. At the time the motion was filed the district court indicated that it was of the opinion that the civil RICO statute had a one-year statute of limitations. Subsequently, the Supreme Court

ruled that the limitations period for civil RICO actions is four years. *Agency Holding Corp. v. Malley–Duff Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

enough to justify a holding that a client-intervenor may appeal an order compelling testimony from the client's attorney. *Id.* at 203 (footnote omitted); *see also In re International Systems & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1238 n. 1 (5th Cir.1982) (holding the same with respect to a client's claim of work product immunity); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7th Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). The teaching of these precedents is clear: the order directing the testimony of Conkling's attorneys is appealable by Conkling.[2]

### 2. The Discovery Order

■ Conkling claims that the four-year civil RICO statute of limitations has been tolled in his case because, until informed by Beckner in 1985, he did not know that Turner's 1963 assertion that he owned 100% of Nichols stock was false. As we understand their argument, defendants contend that because Conkling raised this issue they are entitled to discovery of evidence relevant to whether Conkling knew or should have known of the falsity of Turner's statement prior to November 11, 1981. If so, Conkling's suit filed on November 11, 1985, is barred by the four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The defendants claim that as part of this discovery they are entitled to depose Conkling's attorneys to learn when Conkling actually knew or should have known that Turner's statement was false.

The attorney-client privilege "was intended as a shield, not a sword." *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980). "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980). The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975); *see also Armstrong v. United States*, 440 F.2d 658 (5th Cir.1971); *United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C.1981); *Russell v. Curtin Matheson Scientific, Inc.*, 493 F.Supp. 456 (S.D.Tex.1980); *Pitney-Bowes*, 86 F.R.D. 444; *Mierzwicki*, 500 F.Supp. 1331; *Haymes v. Smith*, 73 F.R.D. 572 (W.D.N.Y.1976); *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88 (D.Del. 1974).

Conkling concedes this point but maintains on appeal that the trial court's order violates the protected realm of attorney work product, Fed.R.Civ.P. 26(b)(3). Conkling argues that in *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), this court adopted an absolute rule prohibiting discovery of attorney work product.

The defendants disagree, contending that just as the attorney-client privilege can be waived, the protection normally afforded to attorney work product is waived when a plaintiff claims that his attorney discovered the alleged fraud upon which the cause of action is based. In support of this proposition the defendants cite *American Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706 (W.D.Mo.1978). In that case the court held that discovery of opinion work product was appropriate where the plaintiff sought to avoid the applicable statute of limitations by claiming that he did not learn of the defendant's fraudulent conduct until his attorney discovered the matter.

2. Conkling contends that the court does not have jurisdiction over the defendants' cross-appeal which complains that the district court unreasonably restricted the scope of the requested discovery. If the issue involved in the cross-appeal was the sole issue before the court there is no doubt that jurisdiction would be lacking. However, under the particular facts of this case the cross-appeal is inextricably tied to Conkling's appeal. We therefore conclude that we have jurisdiction to consider the cross-appeal.

The defendants' argument might be persuasive were we presented with a more compelling set of facts. We conclude, however, that in this case the defendants can obtain all of the information relevant to their prescription defense, that might be known by attorneys Beckner and Collins, without doing violence to carefully crafted rules protecting the attorney-client privilege and attorney work effort. The defendants admit that their proposed questions "attempt to determine what evidence was unearthed by Conkling's attorneys during their handling of the St. Clair case which was previously unknown by Conkling." That approach reveals much more than what Conkling knew and when he knew it; it seeks to discover things known to Conkling's attorneys that were unknown to Conkling. That goes too far.

Conkling has injected into this litigation the issue of when he knew or should have known of the falsity of Turner's assertion regarding the stock ownership. There is sufficient cause to permit the defendants to depose Beckner and Collins, but there is no necessity for the questions posed to the attorneys to go beyond: (1) when the attorneys told Conkling or gave him reason to believe that he had been defrauded by Turner; (2) whether Conkling supplied any information relevant to that determination; (3) the specifics of that information; and (4) when it was supplied. This cabined inquiry will provide the defendants with the information relevant to their prescription defense. To the extent that the questions require the attorneys to disclose confidential communications from Conkling, the attorney-client privilege has been waived.

The district court's order is AFFIRMED.

## ADDENDUM

2. QUESTION NO. 1:

Did you advise Mr. Conkling at any time that he had been defrauded in 1963 by Bert Turner or by Nichols Construction?

QUESTION NO. 2:

If so, when did you first so advise Mr. Conkling?

QUESTION NO. 3:

Who was present at the time and under what circumstances was this advice given?

QUESTION NO. 4:

Was the advice oral or were there any notes, memoranda, correspondence, time sheets or anything in writing which would indicate the date that such advice was first given?

QUESTION NO. 5:

If such advice was in fact given to Mr. Conkling, with respect to the first time such advice was given, was it based upon facts and documents supplied to you by Mr. Conkling?

QUESTION NO. 6:

Was the advice or statement that Mr. Conkling had been defrauded in 1963 by Mr. Turner based in any way upon facts supplied to you by any person other than Mr. Conkling?

QUESTION NO. 7:

If so, please describe in detail what facts you relied on in giving that opinion which were obtained by you from sources other than Mr. Conkling.

QUESTION NO. 8:

From whom were these other facts obtained?

QUESTION NO. 9:

Under what circumstances were they obtained?

QUESTION NO. 10:

Were any of these facts not known to Mr. Conkling developed by you during or in connection with your representation of Mr. St. Clair in his lawsuit?

QUESTION NO. 11:

Was your advice to Mr. Conkling that he had been defrauded in 1963 based in any way upon any documents which you obtained from sources other than Mr. Conkling? Identify all such documents.

QUESTION NO. 12:

Identify all documents relied upon by you in giving your advice of the 1963 fraud to Mr. Conkling which were shown to or seen by Mr. Conkling for the first time on

or after your giving such advice to Mr. Conkling.

QUESTION NO. 13:

On February 13, 1984, in the St. Clair case you signed and filed with the Court an Opposition to Motion to Dismiss Defendants' Counterclaim for Failure to State a Claim, and a Supporting Memorandum, in which the following statement was made by you:

"Beginning in June, 1963, and at various times thereafter, Turner, in combination with the five corporations, knowingly assigned to Mr. St. Clair amounts of stock in the corporations which represented less stock than Mr. St. Clair actually owned in the corporations. This was done by Turner and the corporations knowingly as material misrepresentations. These actions constituted an artifice which had the effect of reducing Mr. St. Clair and the Estate's share in ownership of the five corporations. This artifice would consequently reduce Mr. St. Clair and the Estate's share of all dividends, salaries, and bonuses paid in proportion to their percentage of ownership in the corporations ... and ultimately reduce the sale price of their shares."

Please describe all facts upon which the preceding statement was based and state in detail where and under what circumstances you learned of such facts.

QUESTION NO. 14:

Was a copy of the foregoing described memorandum ever furnished to Mr. Conkling? If so, when?

QUESTION NO. 15:

Was a copy of the Counterclaim filed by you on December 16, 1983 on behalf of Mr. St. Clair, in which the statement is made that: "Nichols breached it [sic] duty to deal fairly with Mr. St. Clair when in June, 19863 [sic] Nichols knowingly assigned to Mr. St. Clair stock representing an 8.00 percent ownership in Nichols when, in fact, Mr. St. Clair owned an 8.69565 percent interest in Nichols," ever furnished to Mr. Conkling? If so, when?

QUESTION NO. 16:

If the basis of your advice to and statement to Mr. Conkling concerning the 1963 fraud against him were any facts or documents developed or discovered by you in connection with the handling of the St. Clair case, describe in detail all such documents and facts, and describe the method in which you obtained such facts and documents.

QUESTION NO. 17:

With respect to any facts or documents identified in your answers to the preceding questions, were any such facts or documents given or supplied to you by Mr. Conkling or by other persons in Mr. Conkling's presence? If so, please describe in detail such facts and identify all documents so supplied, and state the dates upon which they were furnished and by whom.

QUESTION NO. 18:

If your answer to No. 17 was yes, state whether there exist any notes, memoranda, time sheets or other documents which would relate to such meetings or which would relate to the subject matter of the discussions of such meetings, and if so, identify such documents in detail.

QUESTION NO. 19:

During the St. Clair litigation, and before Mr. Conkling officially retained you as his attorneys, was Mr. Conkling present at any meetings in which you discussed facts or documents relating to the claim which was made in the St. Clair case by Mr. St. Clair that "In June, 1963 ... Mr. St. Clair was knowingly assigned stock representing 8.00% ownership in Nichols when, in fact, Mr. St. Clair owned a [sic] 8.69565% interest in Nichols?"

QUESTION NO. 20:

If your answer to the preceding question is yes, please describe the circumstances surrounding such meetings, identify all persons present, give the dates of the meetings, describe in detail what was discussed, and relate in detail what Mr. Conkling's role in each meeting was.

QUESTION NO. 21:

During your handling of the St. Clair case, did Mr. Conkling at any time furnish

you either orally or in writing any facts relating to the issue of whether Mr. St. Clair or Mr. Conkling were owners of 8.69565% of Nichols stock as of June, 1963, or the issue of whether the issuance to either of them of certificates representing only 8% of Nichols stock was in any way a breach of duty by Nichols or by Mr. Turner?

QUESTION NO. 22:

If so, identify all such information furnished to you by Mr. Conkling and identify any and all documents which relate to or reflect the information given to you by Mr. Conkling as well as the date or dates upon which he supplied such information.

QUESTION NO. 23:

Prior to your informing Mr. Conkling that he had been defrauded in 1963, had you ever discussed with Mr. Conkling any of the allegations referred to above in Questions 13, 19 and 21 which were made by you in the St. Clair case? If so, describe in detail such discussions, state when they took place, who was present, and identify all documents relating to or reflecting such discussions, including documents which would be relevant in identifying the date of such discussions.

QUESTION NO. 24:

Prior to November 20, 1984, did Mr. Conkling ever seek advice or legal representation from you?

QUESTION NO. 25:

Please identify all occasions prior to November 20, 1984 (the date of Mr. Conkling's retainer agreement) on which Mr. Conkling had discussions with you or was present at discussions concerning or in any way relating to the stock in the Nichols Corporation owned by either Mr. Conkling or Mr. St. Clair.

QUESTION NO. 26:

With respect to all such meetings and discussions which occurred prior to your giving Mr. Conkling for the first time the advice that he had been defrauded in 1963, describe in detail the subject matter of the discussions, identify all persons present, identify all documents which in any way relate or would reflect such discussions, including the date thereof, and state in detail what was discussed.

QUESTION NO. 27:

If so, describe in detail all such occasions upon which Mr. Conkling sought advice or representation, including dates.

QUESTION NO. 28:

Please state whether the subject of any such advice sought by Mr. Conkling or legal representation sought by him involved or related in any way to Mr. Conkling's stock ownership in any of the Nichols corporations.

QUESTION NO. 29:

Describe in detail the nature of the advice or representation sought which involved or related to Mr. Conkling's stock in any of the Nichols corporations, and identify all documents which relate or refer in any way to your relationship prior to December 20, 1984 with Mr. Conkling or meetings held with him.

QUESTION NO. 30:

Prior to November 20, 1984, did Mr. Conkling ever furnish you any facts and documents surrounding Mr. Conkling's acquisition of Nichols stock in 1962 and the June 28, 1963 "Agreement?"

QUESTION NO. 31:

If so, please describe in detail all facts and documents furnish [sic] you by Mr. Conkling surrounding such acquisition and "Agreement," and state in detail the dates upon which and circumstances surrounding Mr. Conkling's furnishing such facts and documents.

QUESTION NO. 32:

If your answer to Question No. 30 was yes, describe in detail your role in preparing or notarizing Mr. Conkling's Affidavit dated September 19, 1986, in which the following statement was made by him under oath:

"On November 20, 1984, I retained the law firm of Donald L. Beckner Counselors and Attorneys at Law. A copy of the retainer agreement is attached hereto as Exhibit 'Conkling 4–7.' Subsequently, I detailed to Mr. Beckner the facts and

documents surrounding my acquisition of Nichols stock in 1962, and the June 28, 1963 'agreement.' During one of these discussions Mr. Beckner informed me that it was his opinion that the statement in the June 28, 1963 'agreement' that Turner owned 100% of the stock of Nichols was false. No one had informed me of the falsity of this statement prior to this discussion. I did not know that Turner's statement was false until I was so informed."

QUESTION NO. 33:

If your answer to No. 30 was yes, did you advise Mr. Conkling prior to his execution of his September 19, 1986 Affidavit that the statement contained in paragraph 10 thereof was either incorrect or incomplete?