Flannery, J.
This case comes before this court on defendants’ motion to determine the sufficiency of the plaintiffs’ claim of attorney-client privilege. The plaintiffs instituted the underlying action against the defendants seeking a declaration, pursuant to G.L.c. 231A, that no binding agreement exists between the parties concerning the development and management of certain real estate. The defendants counterclaimed alleging breach of express contract (Counts I-II); breach of implied contract (Counts III-IV); tortious breach of contract (Count V); breach of the covenant of good faith and fair dealing (Counts VI-VII), breach of fiduciary obligations and constructive fraud (Counts VIII-IX), deceit, fraud, and misrepresentation (Count X], economic duress (Count XI), interference with advantageous business relations (Count XII); negligence (Count XIII); unfair and deceptive trade practices in violation of G.L.c. 93A (CountXTV); and indemniiy (Count XV).
Although discovery in this case is substantially complete, the defendants seek to depose the plaintiffs’ former counsel, Richard J. Snyder. Plaintiffs’ present counsel instructed Snyder not to answer questions concerning certain letters dated September 12, 1989, asserting the attorney-client privilege. The defendants now seek a ruling on the validity of the plaintiffs’ privilege claim. In the event that this court finds that the privilege has been waived, the defendants request an order compelling Snyder’s testimony.[2] For the reasons herein stated, I find that the plaintiffs have waived the attorney-client privilege. Accordingly, Snyder shall answer the defendants’ questions concerning Marshall’s knowledge of the alleged agreement between the Fund and C&S, including information relating to the September 12, 1989 letters.
BACKGROUND
In about March of 1989, the defendants, Cornu-Schaab Properties, Inc., Thomas W. Cornu, Charles L. Schaab II, and the 90 Broadway Realty Trust, (herein collectively referred to as “C&S”), initiated discussions with the plaintiffs, as Trustees of the Massachusetts State Carpenters Pension Fund (hereinafter “the Fund”), concerning the development of certain real estate located at 90 Broadway and 162 Columbus Avenue in Boston. The Fund and C&S contemplated establishing a partnership to acquire, develop, and improve the properties, and to operate, maintain, and lease the same. Although the central controversy in the underlying case is whether the parties reached a binding agreement, it is undisputed that C&S owned the property during all relevant periods. Two Massachusetts banks held mortgages on the property for which C&S was personally liable.[3]
In September 1989, both mortgagees were becoming anxious about the status of their loans. The Fund’s Chairman, Robert D. Marshall, sent letters, dated *293 September 12, 1989, to the two mortgagees to allay their concerns. In the letters, Marshall informed the banks that their loans would be paid when the 90 Broadway transaction closed. Marshall further stated that “You should feel free to call upon me or our legal counsel, Richard J. Snyder, Goldstein and Manello, 439-8900 for any specific questions you may have.”[4] Sometime after the letters were sent, Marshall died.
For reasons not relevant to the present controversy, the parties never developed the 90 Broadway property. Consequently, the Fund sought declaratory relief that the parties did not enter into a binding agreement. C&S counterclaimed, alleging the existence of an agreement between the parties.
During discovery C&S deposed the Fund’s former counsel, Richard J. Snyder. In response to questions concerning the preparation and content of the September 12 letters, the Fund asserts that its deceased Chairman’s communications to its attorney remain privileged from disclosure. C&S seeks an order directing Attorney Snyder to respond.
DISCUSSION
“Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . .” Mass.R.Civ.P. 26(b)(1); 365 Mass. 772 (1974); see also Hull Municipal Lighting Plant v. Mass. Municipal Wholesale Elec. Co., 414 Mass. 609, 615 (1993) (discussing Mass.R.Civ.P. 26(b)(1)); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 270-72 (1991) (discussing discovery of information protected by attorney-client privilege). In order for the Fund to legitimately refuse to answer C&S’s deposition questions, the information sought by C&S must have been the subject of a privileged communication.
The attorney-client privilege is the oldest common law privilege protecting confidential communications. Upjohn Co. v. United States, 449 U.S. 383, 386 (1981) (discussing the history of the attorney-client privilege). It protects from discovery communications between clients and their attorneys for the purpose of obtaining legal advice. Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269, 273 (D.Mass. 1991). In this way, the privilege encourages unfettered communication between clients and their attorneys. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269, 273 (D.Mass. 1991); Connelly v. Dunn & Bradstreet, Inc., 96 F.R.D. 339, 341 (D.Mass. 1982).
The privilege “is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.” In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 481-82 (1990) (citations omitted). Since the attorney-client privilege runs contrary to full disclosure of pertinent information, it should be strictly construed. Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269, 273 (D.Mass. 1991) (discussing strict construction of attorney-client privilege); United States v. United Shoe Machine Corp., 89 F.Supp. 357, 358 (D.Mass. 1950); see also In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 482 (1990) (noting inherent tension between attorney-client privilege and discovery).
The attorney-client privilege exists only if: (1) the person asserting the privilege was or sought to become a client; (2) the communication was made to a lawyer acting as such; (3) the communication was made by a client without strangers present with a view to obtaining the lawyer’s legal advice, opinion, or assistance in legal matters, and not for the purpose of committing a tort or crime; and (4) the privilege has not been waived. United States v. Bay State Ambulance and Hosp. Rental Service, Inc., 874 F.2d 20, 27-28 (1st Cir. 1989) (discussing criteria for attorney-client privilege); United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass. 1950) (delineating factors for application of the attorney-client privilege); In re Atlantic Financial Mgmt. Securities Lit., 121 F.R.D. 141, 145-46 (D.Mass. 1988) (same); Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 341 (D.Mass. 1982) (same); In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 482 (1990) (discussing types of communication protected by attorney-client privilege).
The party asserting the privilege bears the burden of showing its applicability. United States v. Bay State Ambulance and Hosp. Rental Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989); Refuse & Environmental Systems, Inc. v. Industrial Services of Am., 120 F.R.D. 8, 10 (D.Mass. 1988). The court determines both the nature and extent of the privilege. Commonwealth v. Clancy, 402 Mass. 664, 666 (1988).
While a client may waive the attorney-client privilege expressly or implicitly, Commonwealth v. Woodberry, 26 Mass.App.Ct. 636, 637 (1988); cf. Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269 (D.Mass. 1991) (discussing waiver of attorney-client privilege), the privilege is not automatically waived by bringing suit. Colonial Gas Co. v. Aetna Casualty & Surety Co., 144 F.R.D. 600, 604 (D.Mass. 1992). Instead, courts look to the specific action taken by the party asserting the privilege to determine whether the asserting party implicitly waived the privilege. Colonial Gas Co. v. Aetna Casualty & Surety Co., 144 F.R.D. 600, 604 (D.Mass. 1992). A party implicitly waives the attorney-client privilege by affirmative conduct where: “(1) assertion of the privilege was a result of some affirmative act, such as filing a suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application *294 of the privilege would have denied the opposing party access to information vital to his defense.” Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). Accord Conkling v. Turner, 883 F.2d 431, 434 (5th Cir. 1989) (attorney-client privilege waived where litigant placed information protected by the privilege in issue by an affirmative action for his own benefit, noting that allowing the invocation of the privilege would be manifestly unfair); Sax v. Sax, 136 F.R.D. 541, 542 (D.Mass. 1991) (discussing test for determining waiver as concerning affirmative action by the privilege holder); Genzyme Corp. v. Ares-Serono, Inc., Civ. No. 91-3189 (Middlesex Super. Ct. 1992) (Butler, J.) (client implicitly waives the attorney-client privilege by relying on the privileged material in asserting an affirmative defense or counterclaim).
Additionally, the attorney-client privilege applies only “to communication expressly intended to be confidential.” Hearn v. Rhay, 68 F.R.D. 574, 579 (E.D. Wash. 1975). Communications intended to be conveyed to third parties do not fall within the privilege’s ambit. See Refuse & Environmental Systems, Inc. v. Industrial Services of Am., 120 F.R.D. 8, 11 (D.Mass. 1988) (privilege applies only to confidential communications between client and attorney, not to those known to third parties or intended to be made public); Peters v. Wallach, 366 Mass. 622, 627 (1975) (“communications between an attorney and client are not privileged, though made privately, if it is understood that the information communicated is to be conveyed to others”). Commonwealth v. Rosenberg, 410 Mass. 347, 354 n.10 (1991) (same); Drew v. Drew, 250 Mass. 41, 45 (1924) (no privilege where information is divulged to a third party); Commonwealth v. Anolik, 27 Mass.App.Ct. 701, 710 (1989) (holding documents intended for publication to others did not constitute privileged communication); cf. Paul J. Liacos, Massachusetts Evidence 185 (5th ed. 1981).
Likewise, a partial disclosure of privileged information may waive the privilege with respect to the communication involving that information. See AMCA International Corp. v. Phipard, 107 F.R.D. 39, 40-44 (D.Mass. 1985) (holding plaintiffs release of a document from its attorney waived the attorney-client privilege as to documents relating to the same subject matter); Zirn v. VLI Corp., 621 A.2d 773, 781 (Del. Supr. 1993) (where the contents of a privileged communication is partially disclosed to others, the privilege is waived as to those communications).
In the instant case, C&S argues that the Fund waived its privilege pertaining to the preparation and subject matter of the September 12 letters. In support of its claim, C&S urges that since the letters clearly indicate that a binding agreement existed between the parties, the Fund has placed information otherwise protected by the attorney-client privilege in issue by seeking declaratory relief and raising affirmative defenses which contradict the letters’ content. In opposition, the Fund asserts that they have not placed the letters or Marshall’s inner thoughts in issue because the letters themselves were neither part of the plaintiffs’ complaint nor their answers to the defendants’ counterclaim. Rather, the Fund contends that C&S raised the letters as an issue.
Both parties misconstrue the concept of waiver as it pertains to the attorney-client privilege. A party does not waive the privilege by bringing suit, Colonial Gas Co. v. Aetna Casualty & Surety Co., 144 F.R.D. 600, 604 (D.Mass. 1992), unless the privilege holder relies on the privileged material in asserting its claim. See Conkling v. Turner, 883 F.2d 431, 434-35 (5th Cir 1989) (where plaintiff raised issue of when he became aware of the defendants’ allegedly fraudulent conduct in response to the defendants’ statute of limitations defense, the court held that the plaintiff waived the attorney-client privilege concerning when the plaintiff may have become aware of the defendants’ fraud); Sax v. Sax, 36 F.R.D. 541, 544 (D.Mass. 1991) (where only the defendant’s attorney could have explained the agreement to the defendant, the defendant waived the attorney-client privilege by claiming a lack of understanding of the agreement); Genzyme Corp. v. Ares-Serono, Inc., Civ. No. 91-3189 (Middlesex Super. Ct. 1992) (Butler, J.) (defendant waived the attorney-client privilege by relying on the protected information in asserting its counterclaim). Since the Fund did not base its claim for declaratory relief on Marshall’s communications with Snyder, it cannot be said that the Fund waived the privilege by merely bringing suit.
Additionally, C&S contends that since the letters’ author is dead, information regarding Marshall’s understanding of the letters’ content is not otherwise available. Consequently, C&S concludes, the information sought is both vital and necessary to their defense of the Fund’s claim for declaratory judgment, and in the prosecution of their counterclaims, given the Fund’s affirmative defenses.
Although the Fund did not proffer Marshall’s letters or inner thoughts in its complaint or defenses to C&S’s counterclaim, Marshall’s perception of the agreement or lack thereof is material in determining the existence of an agreement. By claiming no agreement existed between the parties, the Fund placed Marshall’s perception of the parties’ relationship in issue.
The Fund, however, contends that C&S has failed to demonstrate how deposing Attorney Snyder is vital to C&S’s defense or that they have exhausted every reasonable source of information. Fairness requires that the privilege be deemed waived where it will dimmish, in a meaningful way, C&S’s ability to defend the instant action. Greater Newburyport Clamshell Alliance v. PSCNH, 838 F.2d 13, 20 (1st Cir. 1988). In arguing that the information sought by C&S is notvital in C&S’s defense, the Fund lists various people whom C&S has deposed. In doing so. the Fund demonstrates that “important information will be unavailable to [C&S] if the privilege prevails.” Id.
*295 Nevertheless, these points are not dispositive. By releasing the September 12 letters to third persons, Marshall waived the attorney-client privilege. In opposing C&S’s claim of waiver, the Fund argues that the September 12 letters did not disclose the contents of any privileged communication thereby waiving the attorney-client privilege. Moreover, the Fund claims that the letters’ reference to Snyder was merely a courtesy and did not indicate that Snyder would discuss anything not otherwise contained in the letters. I do not agree.
In indicating that Attorney Snyder could be contacted regarding “any specific matter” pertaining to the letters, Marshall clearly demonstrated an intention to disclose those privileged communications to third persons. Since the privilege only applies to confidential matters not intended to be made public, Refuse & Environmental Systems Inc. v. Industrial Services of Am., 120 F.R.D. 8 (D.Mass. 1988), Marshall’s discussions with Snyder regarding Marshall’s knowledge of the alleged agreement between the Fund and C&S, including information relating to the September 12, 1989 letters, are not privileged.
Moreover, in deposing Snyder, C&S sought to obtain information regarding the authorship of the September 12 letters. “If the fact that an attorney drew or prepared documents can ever be regarded as a communication, it is not a confidential one where the documents are for a public, a quasi-public purpose, intended to be disclosed to third persons.” Gretsky v. Miller, 160 F.Supp. 914, 915 (D.Mass. 1958); see also Refuse & Environmental Systems, Inc. v. Industrial Services of Am., 120 F.R.D. 8, 11 (D.Mass. 1988) (surrounding circumstances or fact of consultation not privileged). Since the letters were disclosed to others, information concerning their authorship is likewise not privileged.
Accordingly, the publication of the September 12 letters, including Marshall’s offer that Attorney Snyder would be available to discuss the letters’ content, and the Fund’s action seeking declaratory relief constitute a waiver of the attorney-client privilege.
ORDER
For the foregoing reasons, this court HOLDS the plaintiffs have waived the attorney-client privilege and ORDERS that Attorney Snyder respond to the defendants’ questions pertaining to Marshall’s knowledge of an alleged agreement between the Fund and C&S, and information relating to the September 12, 1989 letters.

 The defendants do not dispute that the privilege applies ab initio to the communications in question. They contend, rather, that the privilege has been waived by the client.

 The mortgagees were the Boston Trade Bank and the Merchants National Bank of Leominster.

 The letters read:
I am writing this letter to you on behalf of the Massachusetts State Carpenters Pension Fund, of which I am a trustee. This letter will confirm that the Fund has issued a Letter of Commitment to provide permanent financing for the renovation and construction of an office building to be located at 90 Broadway in Boston.
We understand that you are seeking assurances that this financing will go forward and that your present mortgage approximately $1,525,000 will be re-financed.
The nature of our commitment is such that we are prepared to closed within 30 days and have every reason to believe that the construction lender to be designated similarly will be able to close within that period. Our commitment will remain outstanding for as long as reasonably required and we are prepared to work with the construction lender to immediately solve any problems which may arise.
We are very familiar with the properly and with the borrowers, and the documents necessary for the transaction are virtually complete. In our dealings with the borrowers, there have been no difficulties nor delays except some as are normal for such transactions.
We therefore anticipate a closing at which your mortgage will be paid off within the time period provided above and trust that you may be assured that matters should move forward as quickly as possible.
You should feel free to call upon me or our legal counsel, Richard J. Snyder, Goldstein & Manello, 439-8900, for any specific questions you may have.