COMMONWEALTH vs. MIGUEL A. BRITO.

Essex. April 4, 1983. — September 9, 1983.

Present: WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Waiver of trial by jury, Assistance of counsel. *Practice, Criminal*, Waiver of trial by jury.

A criminal defendant was not denied due process of law, his right to trial by jury, or his right to effective assistance of counsel by the circumstances in which he elected to waive a jury trial and to proceed to trial before a judge who knew that, in accord with counsel's advice, the defendant had initially decided to plead guilty and then, contrary to that advice, had changed his mind. [114-118]

INDICTMENTS found and returned in the Superior Court Department on September 7, 1978.

The cases were heard by *Ronan*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Martin C. Gideonse* for the defendant.

*Dyanne Klein Polatin*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. Although there are peripheral claims of ineffective assistance of counsel, this case focuses on the question whether the defendant was denied due process of law and his right to trial by jury when he elected to waive a jury trial and to proceed to trial before a judge who knew that, in accord with his counsel's advice, the defendant had initially decided to plead guilty and then, contrary to that advice, changed his mind. We granted direct appellate review. We conclude that the defendant, faced with overwhelming evidence of his guilt and on notice that the judge knew that he had once decided to plead guilty, waived his right to a jury trial in circumstances that met constitutional requirements.

In September, 1978, the defendant was indicted for various serious crimes arising out of an incident on July 4, 1978, during which the defendant and four others, one a juvenile, pursued two young women on Route 495, stopped their vehicle, broke into it, and thereafter committed a multitude of crimes, including rape, kidnapping, unnatural rape, sodomy, armed robbery, assault and battery by means of a dangerous weapon, and assault with intent to murder. On January 16, 1979, the charges against the defendant and three other adults were assigned to a jury session for trial when the case then being tried concluded. The next day, January 17, there was a transcribed conference in which counsel for each defendant discussed with the judge and the prosecutor whether the defendants would plead guilty. Counsel for the defendant told the judge that he had discussed the evidence with his client and that counsel thought it was overwhelming against him, particularly in light of an unindicted relative's testimony placing the defendant at the scene on Route 495 where the victims' vehicle was stopped. Counsel further related that the defendant had reluctantly agreed to plead guilty.[1] During the next six days, the de-

---

[1] We set forth in full what defense counsel said:

"I represent the Defendant Miguel Brito.

"In the past week, I would say I have seen him probably three times. I saw him Friday at the House of Correction in Salem because he says he had some new evidence relative to the case, and he told me a story; and I told him I would check it out over the weekend, and I did.

"This story that he related to me involved another crime that he claims he participated in and I checked the police records. The date of this incident, the day before, the day following and there was no matter of record involving any such crime being reported.

"I related that to him yesterday in Court here and after we were through, he said he had further witnesses who were alibi witnesses for him, meaning the other defendants, and I questioned him if they would testify; and he said yes.

"Well, we will have to speak to our own separate attorneys and see what the effect of his testimony might be to you.

"This morning I talked to him at length and I went over all of the evidence in the case, which I think is overwhelming against him, because there is an unindicted defendant who is a relation of his and who was

fendant changed his mind. When on January 23, 1979, trial of the next prior case had concluded, only the charges against the defendant remained for disposition. The other three adult defendants had pleaded guilty before the other available judge handling criminal matters and had been sentenced.

In the defendant's presence in open court on January 23, defense counsel told the judge that on the previous Friday the defendant had said he would plead guilty and, "when I talked to him yesterday again, he had changed his mind. And he was pretty adamant about it, and there was nothing I can do . . . ." The judge told the defendant that he had an absolute right to a trial, and the defendant replied, "Yes, sir." Defense counsel also told the judge that he thought the case should be tried jury-waived. The judge told the defendant that he had an absolute right to a trial by jury, and the defendant acknowledged the fact. The defendant then made a statement critical of his trial counsel, but he did not challenge anything his counsel had just said. After a discussion between the defendant and the judge, the defendant agreed to go ahead with the jury trial. The judge considered another preliminary matter and took the noon recess.

Just after the afternoon session had started, and before jury selection had begun, defense counsel told the judge that the defendant had decided to waive his right to a jury trial and to proceed before the judge. The judge then carefully questioned the defendant to be certain that he understood the rights he was waiving. Although this colloquy occurred more than six months before our decision in *Ciummei* v. *Commonwealth*, 378 Mass. 504 (1979), establishing guide-

there and puts him there, and he was very vindictive because he was not indicted, and he felt he should be part and parcel of this.

"But I discussed the full evidence with him, and I discussed the recommendations of the District Attorney and I told him that the Judge did not have to follow them; but they were recommended, and the judge in his wisdom could give him less years or give him more. It would be up to him.

"He was a little belligerent and disappointed, and he said it was a long time to be faced with a prison term of this sort; but then he finally said that he would plead guilty."

lines for on-the-record waivers of the right to trial by jury, the judge reasonably covered the basic points on the record. The defendant had discussed the waiver with his counsel, and the judge took the time to have the defendant's wife understand what the defendant was doing. The colloquy continued:

THE JUDGE:     "One other thing I should tell you. You know, if I hear this case jury-waived, I am aware of the fact that there was some talk about guilty pleas, and that some other people plead guilty."

THE DEFENDANT:  "Excuse me."

THE JUDGE:     "If I heard this jury waived, you have to have in mind that I know, because this case was assigned to me, I know that there were two or three other defendants. I know that they plead guilty."

THE DEFENDANT:  "Yes."

THE JUDGE:     "It is easy enough because they aren't here. And I sent them back to the other session if they wanted to plead guilty. So I know that.

"I don't know anything about your case, but you would have to have in mind, I would want you to know that I know there were other defendants who are no longer involved here, and that they plead guilty."

THE DEFENDANT:  "Yes. To my knowledge, my lawyer, you know, he is helping me in this case. He told me it would be better without a jury. So, I don't know nothing about the law or nothing."

THE JUDGE:          "Well, but you do understand you are giving up a jury trial and you are having one Judge rather than twelve people hear it."

THE DEFENDANT:  "Yes, I understand that."[2]

The case against the defendant was strong.  He was in trouble, and he knew it.  He had heard the victims' testimony at the probable cause hearing.  His uncle and his uncle's girl friend saw the defendant break into the young women's car that had been forced over to the side of Route 495, and he knew that they would place him at the scene.  He knew that his codefendants had pleaded guilty and had received substantial sentences.  He may have hoped that his codefendants would testify, as they later did,[3] that he was

---

[2] A few moments later, after the waiver form was read to members of the defendant's family, the following was said:

THE JUDGE:          "So that I want to make sure that he understands all the ramifications of that [waiver].

"I told him that I know because this whole case was assigned to me to start yesterday.  I do know that there were two or three others.  I do know that they through their lawyer informed me that they were going to offer me to plead guilty.  So I didn't want to know any more about it.  I sent them back to the other Judge.  But if I try this case jury waived, I do know that much about it.  Do you follow me?"

THE DEFENDANT:  "Yes, I follow you. May I speak with my lawyer?"
THE JUDGE:          "You certainly better, sure."
THE DEFENDANT:  "Yes, I understand."
THE JUDGE:          "All right?"
THE DEFENDANT:  "Yes."
THE JUDGE:          "You still want to waive your trial by jury?"
THE DEFENDANT:  "Yes."

[3] The former codefendants' testimony on behalf of the defendant seems particularly unconvincing.  Two of them identified one Harry and one Junior as participating in the crimes, but they did not know their last names, where they lived, or anything else about them.  The third codefendant identified the two others as Harry Ruiz and Alfredo Gonzales. His credibility was called in question by his failure to name one of the earlier witnesses as a participant.

not present when the crimes were committed, but one of the codefendants had given a statement fully implicating the defendant. The prosecution used it to impeach that codefendant at the trial. The defendant's chances either before a jury or before a judge looked hopeless. From our reading of the transcript of the defendant's trial for these vicious crimes, we conclude that the evidence supported any pretrial estimate of hopelessness. No jury could have helped but have sympathy for the victims. The defendant, advised by defense counsel, could easily have reached the conclusion that it would be better to try the case to a judge, even to a judge who knew that the defendant had once agreed to follow his attorney's strong recommendation to plead guilty, than to try the case to a jury. There was no reasonable possibility of a continuance. The witnesses were available for trial, including one victim who had come from college in the Midwest.

We see no ineffectiveness of counsel that caused any material prejudice to the defendant, nor in the circumstances was the defendant denied due process of law or his right to trial by jury.[4] The defendant made his choice, and, in the absence of a violation of his constitutional rights, he must take the consequences. The defendant, of course, was present when counsel told the judge that the defendant had ini-

---

[4] In *State* v. *Hutchinson,* 260 Md. 227, 237 (1970), a judge sitting without a jury concluded in the course of the defendant's trial that the defendant's confession was inadmissible because it was not voluntary and was not given after proper Miranda warnings. The Court of Appeals of Maryland held that the defendant was not denied a fair trial where the judge said he would disregard the confession and later found the defendant guilty on the circumstantial evidence in the case. See *Smith* v. *United States,* 360 F.2d 590, 592 (5th Cir. 1966); *In re W. N. W.,* 343 A.2d 55, 57-58 (D.C. 1975). However, a judge in a jury waived trial may conclude that knowledge of an anticipated guilty plea would prejudice her view of the case warranting the declaration of a mistrial. See *Cornish* v. *State,* 272 Md. 312, 315, 322 (1974).

Where defense counsel told a judge, who later tried the case without jury, that the government's case could be proved beyond a reasonable doubt and that the defendant intended to commit perjury, a defendant was held to have been denied due process of law. See *Butler* v. *United States,* 414 A.2d 844, 852-853 (D.C. 1980).

tially agreed to plead guilty. It would have been better if the judge had obtained explicit acknowledgment from the defendant that at the time of the jury waiver he was aware of what the judge knew, but the omission is not fatal. See *Commonwealth* v. *Coyne*, 372 Mass. 599, 602-603 (1977). We attach significance to the fact that, at the hearing on the motion for a new trial, the defendant never testified that he agreed to waive his right to a jury trial without knowing that the judge was aware of his earlier decision to plead guilty. We note as well that on January 23, when the defendant expressed his dissatisfaction with his attorney, he did not deny that he had once agreed to plead guilty. The judge's finding that the defendant made his waiver knowing of the judge's knowledge is fully warranted.[5] The defendant did not ask for a different judge to hear his case, as he had at his probable cause hearing. He told his counsel at the luncheon recess that he liked something the judge had said in the morning session and wanted the judge to hear the matter.

We reject the claim that the defendant is entitled to a new trial because a Superior Court judge appointed incompetent counsel. There is no support for that assertion.

---

[5] The defendant's brief makes zealous assertions that are often inaccurate or unsupported by the record, or both. As the record plainly shows, the judge's acceptance of the jury waiver was not a "ritual acceptance." There is no record support for the claim that the judge failed "to be candid" about what he had heard from defense counsel in the absence of the defendants but in the presence of the prosecutor. The judge did not know whether the defendant knew of the guilty pleas of the other defendants, and perhaps he raised the point because he wanted the defendant to know he knew of them. On the other hand, the judge did know that the defendant knew that the judge had heard that the defendant had once decided to plead guilty and had changed his mind.

We find the argument that the judge engaged in "a complicity, however initially unwitting, in a design to protect incompetent counsel" as wholly unwarranted. The same must be said of the claim of "active dissembling" by the judge and the claim that the judge was concerned "in concealing his own departures from impartiality." The claims are based on utter speculation and wild inference. There is a fundamental and serious question concerning the propriety of the circumstances under which the defendant waived his right to a trial by jury. Worthwhile analysis of that question is not aided by reliance on facts that the trial judge explicitly and reasonably found were not true.

We need not consider in depth the question whether it was improper for trial counsel to turn over portions of his files to the office of the district attorney, after the defendant, in seeking a new trial, asserted the ineffectiveness of his trial counsel. Any impropriety of trial counsel in doing so has no bearing on whether the defendant is entitled to a new trial. Once such a charge is made, the attorney-client privilege may be treated as waived at least in part, but trial counsel's obligation may continue to preserve confidences whose disclosure is not relevant to the defense of the charge of his ineffectiveness as counsel. See *Tasby* v. *United States,* 504 F.2d 332, 336 (8th Cir. 1974), cert. denied, 419 U.S. 1125 (1975); *Levin* v. *Ripple Twist Mills, Inc.,* 416 F. Supp. 876, 886-887 (E.D. Pa. 1976); *Lawson* v. *State,* 492 P.2d 1113, 1116-1117 (Okla. Crim. App. 1971); 8 J. Wigmore, Evidence § 2327(6), at 638 (McNaughton rev. 1961); S.J.C. Rule 3:07, DR 4-101(C), as appearing in 382 Mass. 778 (1981) ("A lawyer may reveal . . . (4) Confidences or secrets necessary . . . to defend himself . . . against an accusation of wrongful conduct").

The order denying the defendant's motion for a new trial is affirmed.[6] The judgments are affirmed.

*So ordered.*

---

[6] The defendant argues that the judge's bias against him is shown because the judge imposed more severe sentences on him than the other judge imposed on the codefendants. We do not agree. The judge made an extensive statement in explanation of the sentences imposed. Aware of the disparity of the sentences, he pointed out that the defendant was the one who had a rifle and smashed a window of the victims' car to force entry into their car. The defendant, he noted, was the only defendant to attack both victims. "He alone sodomized. He alone had a gun. He was the leader."