SERGE DARIUS & another[1] *vs.* CITY OF BOSTON.

Suffolk. November 6, 2000. - January 26, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & SOSMAN, JJ.

*Attorney at Law,* Attorney-client relationship, Work product. *Privileged Communication. Waiver. Practice, Civil,* Discovery, Waiver. *Limitations, Statute of.*

This court concluded that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case ("at issue" waiver). [277-279]

In a civil action, the plaintiff did not waive the attorney-client privilege with respect to conversations at a 1996 meeting with her counsel, by asserting that she first learned at that meeting of a causal connection between the defendant's conduct in 1992 and her child's injuries, where any communication at that meeting did not bear on the issue whether the plaintiff had discovered her cause of action more than two years before she presented her claim under G. L. c. 258, § 4. [279-282]

A subpoena duces tecum, served with a notice of deposition in a civil action, was overly broad with respect to documents sought, which were, in any event, privileged and not discoverable. [282-283]

A defendant in a civil action made no showing that privileged information it sought in discovery was not available from any other source. [283-284]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1997.

A motion to compel production of documents was heard by *John C. Cratsley,* J.; a petition seeking relief from an order allowing the motion to compel was considered by *George Jacobs,* J., and the matter was reported by him to a panel of the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Lisa G. Arrowood (Nicholas Carter* with her) for the plaintiffs.

*Peter M. Kelley,* Assistant Corporation Counsel, for the defendant.

---

[1]Marie Conserve. The plaintiffs are the parents and next friends of Sermisha Darius, a minor.

MARSHALL, C.J. We are asked in this case to review an order of a Superior Court judge that compels the plaintiffs' counsel to produce all documents in their files concerning a meeting between counsel and one or both plaintiffs in the spring of 1996. We vacate the order and remand the case to the Superior Court.

1. *Background.* On November 16, 1992, Marie Conserve gave birth to a daughter, Sermisha Darius, at Boston City Hospital, which is presently known as Boston Medical Center. There were complications during the delivery. The child allegedly suffers from neurological impairments. On October 17, 1997, the plaintiffs commenced an action against the hospital and various other defendants, alleging that the child's injuries were caused by their negligence.

On or about January 15, 1998, while the litigation was pending, the plaintiffs sent a letter to the city of Boston legal department purporting to be a letter of presentment pursuant to the Massachusetts Tort Claims Act, G. L. c. 258, § 4. Thereafter, the parties stipulated to dismissal without prejudice of the claim against the hospital, and the hospital effectively was dismissed as a named defendant. The plaintiffs sought and were granted leave to amend the complaint to add the city as a defendant.[2]

The city moved to dismiss the claim against it on the ground that the plaintiffs' presentment letter was not timely.[3] In opposition to that motion, the plaintiffs relied on an affidavit from Marie Conserve and her answers to interrogatories that had been propounded by a defendant other than the city. In both her affidavit and interrogatory answers, Conserve stated that it was not until "the Spring of 1996," when she met with her present counsel, that she first learned that the hospital and the other defendants caused her child's injuries. The plaintiffs apparently sought to establish that their cause of action did not arise for presentment purposes until the spring of 1996, when Conserve

---

[2]The second amended complaint asserted a single cause of action against the city. The plaintiffs alleged that the city was liable for the negligence of the hospital, its employees, and the doctors who were involved in the delivery.

[3]General Laws c. 258, § 4, requires that a claim under the tort claims act be "presented . . . in writing . . . within two years after the date upon which the cause of action arose." The so-called "discovery rule" applies in determining when a cause of action arises for presentment purposes. *Heck* v. *Commonwealth*, 397 Mass. 336, 340 (1986). *Krasnow* v. *Allen*, 29 Mass. App. Ct. 562, 567 (1990).

met with her counsel.[4] A judge in the Superior Court denied the motion "without prejudice to presenting [the] issue of presentment by summary judgment motion."

The city then served on the plaintiffs' counsel's law firm a deposition subpoena duces tecum calling for the keeper of records of the firm to produce the following documents:

> "1. Any and all documents relating to, evidencing, or memorializing any and all arrangements, preparations for, preliminary conversations about, or scheduling memorializing the meeting between [the plaintiffs' attorney] and Marie Conserve in the Spring of 1996 during which Marie Conserve 'first learned that Sermisha's injuries were caused by the hospital and doctors' as is referenced in Marie Conserve's Answers to [interrogatories];

> "2. Any and all documents relating to, evidencing, or memorializing in any way how Marie Conserve came to be referred to [counsel] prior to the meeting referred to in the prior request including, but not in limitation of the following: any documents relating to any prior legal services rendered on behalf of any of the plaintiffs in this action, as well as any documents from any other attorneys, law firms, or persons acting in any legal capacity whatsoever related in any way to the allegations in the plaintiffs' complaints which have been filed in this case;

> "3. Any and all documents related to, evidencing or memorializing the meeting referred to in the First Request."

The plaintiffs' counsel objected to the subpoena on the basis that the requested documents were protected by the attorney-client privilege and work product doctrine. The city moved to compel compliance with the subpoena. A judge in the Superior Court allowed the city's motion, ruling that the plaintiffs had waived the attorney-client privilege (and, presumably, the work product doctrine as well) by placing in issue their communications with counsel on the question when their cause of action arose.

---

[4]The plaintiffs state in their brief that "Jean Darius" met with the present counsel on January 22, 1996. Jean Darius is not a party to this action, and the record does not indicate what involvement he has in the matter.

The plaintiffs then petitioned a single justice of the Appeals Court for relief from the judge's order. See G. L. c. 231, § 118, first par. The single justice reported the matter to a panel of the Appeals Court. We transferred the case to this court on our own motion.

2. *Alleged waiver of privilege.* The city claims that the plaintiffs waived their attorney-client privilege by alleging, in response to the city's motion to dismiss, that they did not learn until the spring of 1996, when they conferred with their present counsel, that the defendants caused their child's injuries. The city claims, in other words, that the plaintiffs effected an "at issue" waiver of their otherwise privileged communications with counsel.[5]

There are, under Massachusetts law, certain exceptions to the attorney-client privilege and some circumstances in which the privilege may be deemed waived other than by express waiver. See P.J. Liacos, Massachusetts Evidence §§ 13.4.7, 13.4.8, at 786-789 (7th ed. 1999), and cases cited. To date, however, we have not addressed the type of "at issue" waiver relied on by the city in this case. The subject of "at issue" waiver has been the topic of considerable litigation in the Federal courts and, to a lesser extent, in State courts in other jurisdictions. The subject has arisen in a broad variety of settings, and the courts have reached varying, sometimes inconsistent, results. Illustrative cases are collected and discussed in 1 S.N. Stone & R.K. Taylor, Testimonial Privileges § 1.50 (2d ed. 1993 & Supp. 1999); 2 P. R. Rice, Attorney-Client Privilege in the United States §§ 9.43 et seq. (2d ed. 1999 & Supp. 2000); and 24 C.A. Wright & K.W. Graham, Jr., Federal Practice and Procedure § 5506 (1986 & Supp. 2000). See also Restatement (Third) of the Law Governing Lawyers § 130, Reporter's Note, at 454-456 (Proposed Final Draft No. 1, 1996).

We accept, as a general principle, that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case. That is the basic

[5]The motion judge focused solely on the question whether the attorney-client privilege had been waived. The record before us does not indicate whether there was any dispute that, but for a possible waiver, the requested documents would be privileged and undiscoverable. The city does not argue on appeal that there is any alternative basis for upholding the judge's order. We shall assume, therefore, that absent a waiver the documents would be privileged and undiscoverable.

premise underlying the concept of "at issue" waiver. That premise has been accepted in Federal and State courts throughout the country, including the United States Court of Appeals for the First Circuit, see *Greater Newburyport Clamshell Alliance* v. *Public Serv. Co. of N.H.*, 838 F.2d 13 (1st Cir. 1988); the United States District Court for the District of Massachusetts, see *Savoy* v. *Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346 (D. Mass. 1998); *Sax* v. *Sax*, 136 F.R.D. 541 (D. Mass. 1991); and the Massachusetts Superior Court.[6] It is also consistent with our decisions discussing exceptions to and waiver of the attorney-client privilege in other situations. See, e.g., *Commonwealth* v. *Goldman*, 395 Mass. 495, 498-502, cert. denied, 474 U.S. 906 (1985); *Commonwealth* v. *Brito*, 390 Mass. 112, 119 (1983). See also *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 269-273 (1991) (concerning discovery obligations of party who seeks to make evidentiary use of privileged communications).

The difficulty lies not in recognizing that a party may implicitly waive the privilege in certain circumstances, but in identifying what those circumstances are and in formulating a workable rule for determining what constitutes an "at issue" waiver in a given case. See 1 McCormick, Evidence § 93, at 373 (5th ed. 1999) ("While there can be no doubt of the desirability of a rule preventing a party from relying upon the advice of counsel as the basis of a claim or defense while at the same time frustrating a full exploration of the character of that advice, the problem of defining when such an issue has been interjected is an extremely difficult one"). Most courts have adopted some variation of the formulation that appears in *Hearn* v. *Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). The judge in that case concluded that an implicit waiver should be found when three conditions exist: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.* at 581. Other courts and commentators have sharply criticized that formulation or concluded that it has been applied too liberally.

---

[6]The parties have brought to our attention unpublished memoranda and orders of Superior Court judges, other than in the case at bar, discussing "at issue" waiver.

See, e.g., *Rhone-Poulenc Rorer Inc.* v. *Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994); *Ryall* v. *Appleton Elec. Co.*, 153 F.R.D. 660, 663 n.1 (D. Colo. 1994); *Allen* v. *West Point-Pepperell Inc.*, 848 F. Supp. 423, 429 (S.D.N.Y. 1994); *Reming-ton Arms Co.* v. *Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 413-414 (D. Del. 1992); *Standard Chartered Bank PLC* v. *Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 81 (S.D.N.Y. 1986); *Public Serv. Co. of N.M.* v. *Lyons*, 10 P.3d 166, 172-173 (N.M. Ct. App. 2000). See also 1 McCormick, Evidence, *supra* ("Some decisions have . . . extended the doctrine broadly to cases in which a mental state asserted by a client is sought to be shown inconsistent with the advice of counsel. Such extensions seem dubious . . ."); Developments in the Law — Privileged Com-munications, 98 Harv. L. Rev. 1450, 1637-1643 (1985).

We need not attempt, in this case, to formulate an exact definition of the "at issue" waiver doctrine under Massachusetts law, because we are satisfied that the discovery sought by the city falls well beyond whatever definition we might adopt. We reach this conclusion for at least three reasons, which we explain below: (a) Marie Conserve's meeting with counsel occurred less than two years before the date of the letter pursuant to G. L. c. 258, § 4, that the city claims was untimely; (b) the city's deposition subpoena called for the wholesale disclosure of docu-ments in counsel's possession concerning the meeting with Conserve; and (c) it has not been established on this record that the requested documents are necessary to the city's position.

a. *Temporal limitation.* The city sought to compel counsel's law firm to produce all documents in the firm's possession concerning a meeting between Marie Conserve and counsel in the spring of 1996. Conserve has stated that it was at that meet-ing that she first learned of a causal connection between the defendant's conduct and her child's injuries. The letter that counsel subsequently sent to the city legal department under G. L. c. 258, § 4, was dated January 15, 1998, less than two years after counsel's meeting with Conserve.

What was placed "at issue" in this litigation as a result of Conserve's factual assertions in her affidavit and interrogatory answers, and by the plaintiffs' reliance on the so-called discovery rule in an effort to defeat the city's claim that their presentment was untimely, was not what their present counsel told them in the spring of 1996. What was put "at issue" was what the plaintiffs knew or should have known before January

15, 1996. Only if they knew or reasonably should have known of the possible causal connection before then, i.e., more than two years before their January 15, 1998, presentment under G. L. c. 258, § 4, would their presentment be untimely. See note 3, *supra*. It cannot be said that counsel's advice to the plaintiffs in the spring of 1996 had any relevance to what they knew or should have known before January 15, 1996. To state it simply, what they may have been told by their counsel for the first time in the spring could not have influenced what they knew or should have known in January, 1996.[7]

We also conclude, conversely, that what the plaintiffs communicated to their counsel in the spring of 1996 (or perhaps what counsel discovered) about their knowledge or reason to know of a causal connection is privileged, and that the privilege has not been waived. The only reason we can see for the city's attempting to obtain that information from present counsel is to test the credibility of the plaintiffs — in other words, to see whether the plaintiffs confided in their counsel anything that contradicted their assertion that they did not know of a causal connection before being informed of it by counsel. We shall not allow the city to pit counsel against their clients in that fashion. To permit that kind of inquiry would pry open the attorney-client relationship and strike at the very core of the privilege. In virtually every case in which the statute of limitations (or lack of timely presentment, as here) is pleaded as a defense and the client relies on the discovery rule to overcome the limitation period, the opposing party would be able to inquire of the client's counsel: Did your client tell you anything in confidence

---

[7]This is not a case, therefore, where a party relies on "advice of counsel" in its claim or defense. It is thus distinguishable from the cases relied on by the city (and others like them) in which the advice of counsel, at the time a party took certain action, is directly or indirectly implicated in the party's claim or defense: *United States* v. *Bilzerian*, 926 F.2d 1285, 1291-1294 (2d Cir.), cert. denied, 502 U.S. 813 (1991) (holding that defendant's assertion that he thought his actions were legal would place in issue advice received from counsel at time actions were taken); *Sedco Int'l, S.A.* v. *Cory*, 683 F.2d 1201, 1204-1207 (8th Cir.), cert. denied, 459 U.S. 1017 (1982) (rejecting plaintiff's attempt to discover advice given to defendant by counsel to defeat defendant's claim of reliance on plaintiff's fraudulent representations); *Hearn* v. *Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). Unlike this case, none of those cases involved the statute of limitations, a presentment period, or the discovery rule.

about what he or she knew that differs from or contradicts what he or she stated in responses to discovery?[8]

This conclusion is supported by the fact that every attorney has an undeniable ethical obligation to avoid the use of (or take remedial measures if the client presents) false evidence by way of affidavit, discovery responses, or testimony. See Mass. R. Prof. C. 3.3 (a), (c), 426 Mass. 1383 (1998); Mass. R. Prof. C. 3.4 (a), 426 Mass. 1389 (1998). See also Mass. R. Prof. C. 8.4 (c), (h), 426 Mass. 1430 (1998). Also, as explained in Part 2c of this opinion, *infra*, a party seeking discovery, the city in this case, typically has other sources from which to obtain this type of information. See *Remington Arms Co.* v. *Liberty Mut. Ins. Co.*, *supra* at 416 n.7 (noting, as grounds for precluding this type of discovery, both the attorney's ethical duty and the fact that liberal discovery rules allow parties "many tools to ferret out the truth").

The city relies on three decisions involving "at issue" waivers in cases involving statutes of limitations. In *Pyramid Controls, Inc.* v. *Siemens Indus. Automations, Inc.*, 176 F.R.D. 269 (N.D. Ill. 1997), the plaintiff brought suit on May 15, 1997, claiming that the defendants had, on June 14, 1995, improperly terminated its franchise without good cause, in violation of the Illinois Franchise Disclosure Act. Under Illinois law, the statutory limitation period for such actions was one year, and thus it was important to determine what the plaintiff knew or should have known about its possible cause of action prior to May 14, 1996.[9] The judge permitted the defendants to obtain documents and testimony from a law firm that had represented the plaintiff during some of the period of time between the date of the al-

---

[8]We need not decide in this case whether the city would be permitted to discover privileged communications between the plaintiffs and any counsel they may have consulted before January 15, 1996. That issue is not before us.

Nothing we say, however, prevents the city from discovering from the plaintiffs basic nonprivileged information such as when they decided to consult their present counsel; whether they consulted any other counsel before consulting with their present counsel, and, if so, when; and what if anything they learned from any nonprivileged sources about their child's injuries at any time.

[9]Pyramid Controls alleged that it did not learn of the unlawfulness of the defendants' conduct until January 17, 1997, when it was so informed by its new counsel. It was the new counsel who then commenced the action. *Pyramid Controls, Inc.* v. *Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997).

leged wrongful termination of its franchise and May 14, 1996. The city, in this case, however, has not sought comparable discovery, for it has not sought discovery from any attorneys who might have represented the plaintiffs between the date of their child's birth and January 15, 1996. See note 8, *supra*.[10]

In *Conkling* v. *Turner*, 883 F.2d 431 (5th Cir. 1989), the plaintiff conceded that his attorney-client privilege had been implicitly waived, and the dispute in that case centered on whether the work product doctrine likewise had been waived. *Id.* at 434. Further, the court narrowly circumscribed the scope of the discovery it allowed. *Id.* at 435. To the extent that *Conkling* v. *Turner, supra*, and the third case cited by the city, *WLIG-TV, Inc.* v. *Cablevision Sys. Corp.*, 879 F. Supp. 229 (E.D.N.Y. 1994), appear to permit the type of discovery from attorneys that the city seeks in this case, we decline to follow their holdings on the facts of this case. We hold that, where a defendant asserts the statute of limitations as a defense and the plaintiff relies on the discovery rule to overcome that defense, the defendant may not, based solely on the plaintiff's invocation of the discovery rule, automatically probe the plaintiff's attorney-client relationship simply to determine whether the plaintiff may have revealed something to his or her attorneys that might be helpful to the defendant's case.

b. *Overly broad scope of document request.* The city's deposition subpoena was sweeping, and called on the plaintiffs' counsel to produce all documents concerning their meeting with the plaintiffs in the spring of 1996. It was not focused on the very limited matter that it claims had been placed "at issue," namely the plaintiffs' knowledge or reason to know of a possible connection between the defendant's conduct and their child's injuries. The subpoena covered everything in writing

---

[10]The city contends that the judge in the *Pyramid Controls* case also permitted the defendants to obtain discovery from the new counsel who represented the plaintiff on January 17, 1997, when it allegedly first learned of the unlawfulness of the defendants' conduct. That, the city contends, was comparable to permitting discovery from the plaintiffs' current counsel in this case. It does not appear from the decision in the *Pyramid Controls* case, however, that the judge actually permitted any discovery from the plaintiff's new counsel, as the city claims. While there is some language in the decision broad enough to suggest that such discovery might be permissible, the opening paragraph of the decision (*id.* at 270) and the decision's conclusion (*id.* at 276) indicate that the judge was only considering and allowing the defendants' motion to compel discovery from the plaintiffs' former counsel, i.e., the law firm that represented the plaintiff in 1995.

that pertained in any way to the plaintiffs' meeting with their counsel. Conceivably it required production of every document reflecting anything the plaintiffs communicated to counsel regarding *any* aspect of the case, or any other case or topic for that matter, at that meeting; every document reflecting what counsel communicated to the plaintiffs before, during, or after the meeting about *any* aspect of the case, whether the document so much as mentioned the initial meeting; notes of counsel, including legal research and possibly other work product, prepared before, during, or after the meeting that pertained to *any* aspect of the meeting; every document prepared by any prior counsel having to do with *any* aspect of the case; and, conceivably, a vast assortment of other confidential documents that pertained in any way, shape, or form to the plaintiffs' meeting with counsel.

An "at issue" waiver, in circumstances where it is recognized, should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case. By definition, it is a limited waiver of the privilege with respect to what has been put "at issue." Courts that have found "at issue" waivers have honored this principle by carefully crafting their orders so as to limit the permissible discovery to what is truly "at issue." Similarly, this court has held in a slightly different context that a waiver of the privilege is not necessarily a blanket waiver. See *Commonwealth v. Brito*, 390 Mass. 112, 119 (1983) ("Once such a charge [of ineffectiveness of counsel] is made, the attorney-client privilege may be treated as waived at least in part, but trial counsel's obligation may continue to preserve confidences whose disclosure is not relevant to the defense of the charge of his ineffectiveness as counsel").

c. *Absence of a showing of necessity.* Finally, there is no indication in the record before us that the city has attempted to obtain from any source other than the plaintiffs' present counsel the type of information it seeks from counsel. The city has not, as far as we know, deposed the plaintiffs, propounded interrogatories to them, or requested documents from them. It has not inquired of the plaintiffs in any way what they knew and when and from whom they first learned it. Rather, once the plaintiffs raised the discovery rule as an issue in the case, the city apparently proceeded directly to the plaintiffs' counsel with a deposition subpoena, demanding in effect that counsel open up their files to the city.

The better reasoned view is that there can be no "at issue" waiver unless it is shown that the privileged information sought to be discovered is not available from any other source. See *Frontier Ref. Inc.* v. *Gorman-Rupp Co.*, 136 F.3d 695, 701-702 (10th Cir. 1998); *Greater Newburyport Clamshell Alliance* v. *Public Serv. Co. of N.H.*, 838 F.2d 13, 20, 22 (1st Cir. 1988) (requiring party seeking discovery to demonstrate that claims or defenses "are enmeshed in important evidence that will be unavailable to [it] if the privilege prevails," and "[D]efendants should demonstrate why it would be unreasonably difficult for them to obtain the information elsewhere or that redundant evidence will be helpful to their case. They do not have to prove that it is absolutely unavailable from other sources. Of course, the more the requested discovery would intrude into the privilege, the greater should be the showing of need and lack of reasonable alternative sources"). See also *Ryall* v. *Appleton Elec. Co.*, 153 F.R.D. 660, 662-663 (D. Colo. 1994); *Standard Chartered Bank PLC* v. *Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 81-82 (S.D.N.Y. 1986). That approach preserves the privilege where possible, deeming it waived only when it is truly necessary to do so.

We do not need to define precisely how exhaustive a party's discovery from alternative sources must be or how strong a showing of necessity a party must make in order to obtain discovery from counsel by way of an "at issue" waiver. Where the city has made no attempt to pursue its inquiry through any other source whatsoever, the city could not make (and has not attempted to make) even the most minimal showing of necessity.

3. *Conclusion.* We accept the premise underlying the concept of "at issue" waiver of the attorney-client privilege: there are circumstances in which a litigant may implicitly waive the privilege, at least in part, by injecting certain types of claims or defenses into a case. We hold for the reasons stated that there has been no waiver in this case. We vacate the order compelling the plaintiffs' counsel to comply with the city's deposition subpoena duces tecum and remand the case to the Superior Court for entry of an order denying the motion to compel.[11]

*So ordered.*

---

[11]The city's position on appeal was not enhanced by its derogatory references to the plaintiffs' case.